UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAM VU,<br><br>            Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, et al.,<br><br>            Defendants. | Case No. 18-cv-03594-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 37 |

Defendant Liberty Mutual Insurance Company, Inc.'s ("LMIC") motion to dismiss plaintiff Tam Vu's third amended complaint is set for hearing on November 16, 2018. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court DENIES defendant's motion to dismiss.

## BACKGROUND

The following facts are taken from the allegations in plaintiff Tam Vu's Third Amended Complaint ("TAC"). Dkt. No. 33. Plaintiff is a resident of San Jose, California. TAC, ¶ 1. Defendant LMIC is a Massachusetts corporation. *Id*., ¶ 2. Defendant Liberty Insurance Corporation ("LIC") is an Illinois corporation. *Id*., ¶ 3. The California Department of Insurance licenses both LMIC and LIC. *Id.* at ¶ 2-3. Plaintiff alleges that LIC and LMIC marketed plaintiff a home insurance policy that provided "complete coverage for [plaintiff's] home's physical structure, for other structures on the property, for damage to [her] personal belongings, and for loss of use resulting from a covered loss." *Id*., ¶ 10. Specifically, the policy guaranteed payment of up to

$624,200 for repairs to the home and "$458,150 for repairs or replacement of damaged property." *Id*., ¶ 12.

Plaintiff alleges that in May 2018, her home sustained water damage to the point of uninhabitability "from a broken water line in her kitchen, causing damage throughout the first floor, and to personal property[.]" *Id*. at ¶ 13. Plaintiff states that she provided prompt notice to "Liberty Mutual," presumably LMIC, which assigned plaintiff the claim number GK43030, and that she fulfilled all conditions necessary to receive payout of her policy benefits. *Id*. at ¶ 14-15.

Plaintiff alleges that her policy states the insurer is a non-existent entity- "Liberty Mutual Insurance"- whereas in reality the insuring entity is LIC. *Id*. at ¶ 16-17. Plaintiff alleges LIC is a wholly owned and controlled subsidiary of LMIC, and that LIC is a mere shell and conduit for the affairs of LMIC.

Plaintiff alleges that LMIC employees were solely responsible for handling plaintiff's claim, and that no employee, supervisor, or manager of LIC took part in investigating plaintiff's claim. *Id*. at ¶ 20-23. Plaintiff contends that LMIC employees failed to disclose benefits, coverage, and time limitations, failed to detail the bases for denial of coverage, and to date have not paid the amount due on the policy. *Id*. at ¶ 30. Plaintiff alleges LMIC employees allegedly violated 10 CCR § 2695.7(d) and Insurance Code § 720.03(h) by concealing coverage, misrepresenting coverage, and "failing to undertake a thorough, fair, and objective investigation of plaintiff's claim." *Id*., ¶ 30.

The Court granted defendant's motion to dismiss plaintiff's Second Amended Complaint, Dkt. No. 25, on October 3, 2018. Plaintiff filed the TAC, Dkt. No. 33, on October 8, 2018. Currently before the Court is defendant LMIC's motion to dismiss plaintiff's TAC, Dkt. No. 37.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to

2

dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

The matter currently in dispute is whether plaintiff has alleged sufficient facts to assert a theory of alter-ego liability. *See* Order Dkt. No. 32. Plaintiff argues LMIC and LIC are alter-egos of one another. TAC, ¶ 24. "To justify piercing the corporate veil on an alter-ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must establish two elements: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of

3

the corporation alone, an inequitable result will follow." *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *5 (N.D. Cal. Feb. 6, 2007) (citations and internal quotations omitted). "Determining whether an alter-ego relationship exists depends on the circumstances of each particular case and is considered an issue for the trier-of-fact." *Traynor v. Lexington Ins. Co.*, No. 209CV02990FMCSSX, 2009 WL 10674942, at *2 (C.D. Cal. June 8, 2009) (citing *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992)). Underlying any court analysis of alter-ego liability "is a general presumption in favor of respecting the corporate entity." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

Here, defendant LMIC concedes that plaintiff pleads sufficient facts to withstand a motion to dismiss on the unity of interest prong. Dkt. No. 37 at 16 ("LMIC agrees that the TAC alleges facts that, when assumed to be true for the purposes of this Fed. Rule Civ. Proc. 12(b) motion, are sufficient to satisfy the unity of interest element at the pleading stage, only.").

Defendant argues plaintiff fails to satisfy the second prong of the alter-ego test. To satisfy the inequitable result prong for alter-ego liability, "the plaintiff must show 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former[.]" *Monaco v. Liberty Life Assur. Co*., No. C06-07021 MJJ, 2007 WL 420139, at *5 (N.D. Cal. Feb. 6, 2007) (internal citations omitted). The Court may consider the same variety of factors in making determinations on both prongs of the alter-ego test. *Traynor* (citing *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838-40 (1962)).

The Court's previous Order focused on inequity as demonstrated through a showing of bad faith. In reviewing the allegations in the TAC, the Court focuses more broadly on the alleged inequity on upholding the corporate structure of LMIC and its subsidiary, LIC.[1] Plaintiff claims two

---

[1] "[W]hile California courts generally require evidence of some bad-faith conduct to fulfill

4

inequitable results will follow if LMIC and LIC are allowed to retain separate corporate structures. TAC, ¶ 26. First, plaintiff contends dismissing LMIC will hamper discovery and trial needs. *Id.* at ¶ 30. The Court is unconvinced this will lead to an inequitable result. The parties may subpoena necessary parties regardless of LMIC's presence in the instant action. Second, plaintiff alleges a fraudulent allocation of labor—in essence, that LMIC has complete control over how claims under LIC policies are investigated, adjusted, and denied, and that LMIC purposefully creates a division of labor to shield itself from liability. *Id.* at ¶ 30-31. Plaintiff alleges this corporate structure is tantamount to institutional bad faith and that upholding such a structure is inequitable because decision making is at the LMIC level, and applies to all companies for which LMIC provides claims investigation services. *Id.*

The allegations in the TAC sufficiently allege, at this stage of the pleadings, that it is plausible LIC is a mere instrument for shielding LMIC from liability. LMIC and its employees handle the day to day operations, management, and claims handling for LIC policy-holders. *See* TAC, ¶ 30; *see also* Dkt. No. 36, ¶¶ 19, 24 (LIC "has no direct employees responsible for investigating and adjusting claims brought under California homeowners insurance policies", and no LIC employee trains others regarding adjustment and investigation.). Plaintiff claims "LIC employees had no role whatsoever in [handling her] claim." TAC, ¶ 30. In particular, plaintiff claims that LMIC "exercised complete control over" her claim, and "[a]ll decisions were made, ratified, and approved by employees, supervisors, and managing agents of LMIC." *Id.* Plaintiff alleges a plausible theory that LMIC and LIC breached the implied duty of good faith and fair dealing by "engag[ing] in an illegal scheme to improperly hide coverage[] from California

---

the second prong of alter-ego liability, that bad-faith conduct must make it inequitable to recognize the corporate form." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) (citing *Gardner,* 9 Cal.App.4th at 1213).

5

insured[.]"[2] *Id*., ¶ 30.

Plaintiff also alleges that defendants comingle their assets. S*ee Id*., ¶ 24 (alleging, *inter alia*, that LMIC and LIC file consolidated tax returns, share bank accounts, and "all profits are passed to LMIC by way of a management agreement and debt structuring"). Furthermore, plaintiff alleges defendants disregard corporate formalities by sharing boards, executives, management, and policies. *Id.* This Court finds that at this stage in the pleadings, plaintiff has sufficiently alleged a plausible theory supporting LIC's mere instrumentality. The Court DENIES defendant's motion to dismiss the TAC.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss the Third Amended Complaint.

**IT IS SO ORDERED**.

Dated: November 14, 2018

SUSAN ILLSTON
United States District Judge

---

[2] The TAC claims that "[t]he means of that scheme include but are not limited to: hiding coverage[]; misrepresenting coverage[]; failing to investigate claims adequately; failing to use licensed experts; applying policy provisions improperly; denying claims without justification; [violation California law]; and forcing insured to file lawsuits to recover policy benefits[.]" TAC, ¶ 30. Plaintiff distinguishes between LMIC and LIC's actions rather than collectively referring to defendants as "Liberty Mutual." *See* TAC, ¶ 30; SAC, ¶ 21. LMIC employee Chukes's email is registered to the libertymutual.com domain. TAC, ¶ 30.